CONSUELA BUTLER                                    CIVIL ACTION

VERSUS                                             NO.  08-4954

MICHAEL J. ASTRUE,                                 SECTION "B" (3)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff, Consuela Butler (Butler), filed this action seeking judicial review of a decision of the Defendant denying her application for Title XVI supplemental security income (SSI).[1] Before the Court are Plaintiff's Motion for Summary Judgment (Doc. Nos. 11, 12, 13) and Defendant's Cross Motion for Summary Judgment and Memorandum in Support (Doc. No. 22). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, for the reasons set forth below, the undersigned Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED, Plaintiff's Motion for Summary Judgment be DENIED, and the decision of the Commissioner be AFFIRMED.

## I. Introduction

Plaintiff  brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income benefits. Butler contends that the Administrative Law Judge ("ALJ") erred in

_____

[1]*See* Decision of Administrative Law Judge (ALJ) Joan G. Knight dated October 26, 2006 [Transcript of Administrative Record ("TR") at 26-31].

not finding her impairments (post traumatic stress disorder (PTSD) and glaucoma (both eyes/blindness right eye) disabling. The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law and should therefore be affirmed.

## II. Administrative Proceedings

On April 22, 2005, Butler filed an application for supplemental security income benefits, alleging that she was disabled due to glaucoma (both eyes), blindness (right eye), headaches and high blood pressure. (Tr. 86-95). Her claim was initially denied, noting that plaintiff is considered only partially credible. (Tr. 120, 172). Butler was formerly a cook helper for a period of two years before she quit working.[2] Butler alleged that she was not able to work because she could not read the food orders; however, the medical evidence showed that she has full vision and good visual acuity in one eye and she had no consistent high blood pressure. *Id.* After that, Butler requested a hearing before an ALJ and a hearing was scheduled for September 12, 2005. (Tr. 61, 64). In the interim, plaintiff was displaced by Hurricane Katrina to Arizona.[3] ALJ Joan G. McKnight of the Phoenix Office of Disability Adjudication and Review conducted a hearing on March 27, 2006, where Butler appeared represented by counsel and testified on her own behalf. (Tr. 304-340). At the conclusion of that initial hearing, the ALJ agreed with plaintiff's counsel that a consultative mental evaluation was necessary under the circumstances

---

[2]See Transcript of March 27, 20 Initial Hearing (Tr. 311).

[3]On June 19, 2006, Dr. Daniel K. Watkins reported to Arizona's Disability Determination Services that Butler was a victim of Hurricane Katrina flooding in New Orleans, saw dead bodies floating in the water, took refuge on the Greater New Orleans Bridge and was evacuated from the Kenner, Louisiana airport to Phoenix. In addition, plaintiff's mother died. His impression was AXIS I: PTSD and Bereavement. (Tr. 231-235).

and the hearing was held open. (Tr. 342).

On June 19, 2006, a mental evaluation was conducted by Dr. Daniel K. Watkins at the request of the state agency. (Tr. 231-235). On September 8, 2006, a supplemental hearing was conducted. Plaintiff again appeared and testified along with Vocational Expert (VE) David Janus and Edward Jasinski, Ph.D., a Social Security medical expert.[4]

On October 26, 2006, the ALJ issued a decision finding Butler not disabled within the meaning of the Act. (Tr. 31). Butler sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused her discretion; (2) the ALJ made an error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Butler's contentions in light of the applicable regulations and evidence, the Appeals Council, on October 24, 2007, denied Butler's request for review. The ALJ's findings and decision thus became final. Butler filed a timely appeal of the ALJ's decision. Both the Commissioner and Butler filed Motions for Summary Judgment. This appeal is now ripe for ruling. The evidence is set forth in the administrative record, pages 1-366.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's

---

[4]Transcript of September 8, 2006 Supplemental Hearing (Tr. 343-365); Psychologist Edward J. Jasinski's Curriculum Vitae (Tr. 43-45); Vocational Expert/Consultant David A. Janus's Curriculum Vitae (Tr. 41-42).

decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir.1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, the court may not "re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir.1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir.1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 101 F.2d 162, 164 (5th Cir.1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137

(5th Cir.1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner: the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her or whether she would be hired if he applied to work. *See* 42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293.

The Commissioner applies a five-step sequential process to decide disability status: (1) if the claimant is presently working, a finding of "not disabled" must be made; (2) if the claimant does not have a "severe impairment" or combination of impairments, she will not be found disabled; (3) if the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded; (4) if the

claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and (5) if the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience and residual functional capacity, she will be found disabled. *Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n. 2 (5th Cir.1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir.1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir.1999). If the claimant is successful, the burden shifts to the Commissioner, at step five, to show that she can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ determined, in her October 26, 2006 decision, that Butler was not disabled at step four. In particular, the ALJ determined that Butler was not presently working (step one); that Butler's optic atrophy of the right eye (blindness), glaucoma of both eyes, hypertension (under good control and asymptomatic) and post traumatic stress disorder (PTSD) were "severe," but not disabling (step two);[5] based on the medical expert's testimony and considering the impression of Dr. Watkins and medical treatment records of James Jurow, Ph.D., Butler's mental impairment considered singly and in combination with other impairments did not meet or equal an impairment listed in Appendix 1 of the Regulations (step three); and based upon VE

---

[5]Regarding Butler's complaints of frontal headaches, the ALJ highlighted that the computed tomography (CT) of the head/brain performed on August 11, 2006 (Exh. 10F), showed no definite acute abnormality. (Tr. 29).

Jannus's testimony, Butler was capable of performing her past work as a cook helper and janitor (step four).

The ALJ determined that plaintiff had the residual functional capacity to perform work at all exertional levels, and while unable to climb ladders, ropes and scaffolds, she was able to frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (Tr. 29). Additionally, the ALJ reported at Finding 5 that, due to right eye blindness and glaucoma in both eyes, Butler had limited depth perception and field of vision, but near acuity, far acuity, accommodation and color vision were unlimited. *Id.* ALJ Knight further explained that, due to PTSD, plaintiff was able to perform only simple, low stress work with no production or pace quotas, to interact appropriately if the interaction was minimal and to deal with minor changes in routine. *Id.* She further found no limits on Butler's ability to use judgment, but that plaintiff could not concentrate of complex tasks. The ALJ noted that plaintiff's PTSD was mild with treatment.

Despite her impairment, plaintiff was able to (1) travel back to New Orleans for a birthday with her family, (2) plan her move back to New Orleans and carry out that plan, and (3) prepare her own meals, do laundry, iron and clean the house, grocery shop, handle a bank account, pay bills, read, watch television, go swimming, and socialize with friends on a weekly basis. *Id.* The ALJ explained that the aforesaid evidence amply demonstrated that the plaintiff was independent and able to travel. With respect to her vision, the ALJ noted that medical records show plaintiff's visual acuity in the left eye from 20/25 to 20/40 and that, even at 20/40, Butler should only have difficulty reading very small print and seeing very small objects. In sum, the ALJ observed that Butler's activities "are not the activities of an individual too disabled to

perform substantial gainful activity" and concluded that the objective medical evidence fails to establish limitations in the claimant's ability to function that are sufficient to preclude all gainful activity. (Tr. 30-31).

In this appeal, the Court must determine whether substantial evidence supports the step four finding, and whether the ALJ used the correct legal standards in arriving at that conclusion.

## V. Statement of Errors

Plaintiff contends that the ALJ violated her right to a full and fair hearing by preventing the vocational expert from testifying consistent with record evidence and by creating and relying on vague terms that were not defined in the regulations or on the record. Butler further argues that the ALJ made an erroneous credibility assessment based upon reasons that do not pertain to her alleged disabilities. More particularly, plaintiff complains that the ALJ erroneously failed to perform the two-part analysis required in *Cotton v. Bowen*, 799 F.2d 1403 (9TH Cir. 1996).[6] Plaintiff argues that the ALJ failed to state "clear and convincing reasons" – the applicable standard in the Ninth Circuit – supporting "her adverse credibility finding."[7] Plaintiff contends that the ALJ's conclusion that her PTSD was mild is not supported by the record. Butler emphasizes that the medical evidence and physician's reports indicate her symptoms were "major to moderate."[8] In addition, Butler contends that the ALJ ignored her testimony that she

---

[6]Ninth Circuit case law requires that, in the absence of evidence of malingering, the ALJ must give clear and convincing reasons in support of her adverse credibility finding. *See Robins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006). The Commissioner points out that there is no such precedent in the Fifth Circuit.

[7]*See* Plaintiff's Motion for Summary Judgment at p.16 (citing *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001) and *Robbins v. Social Security Administration*, 278 F.3d 920, 924 (9th Cir. 2002), *inter alia*) [Rec. Doc. #13].

[8]*Id.*

cannot drive or read, does not cook, does only "bare minimum" house cleaning and suffers from daily headaches.[9] In sum, Butler argues that a finding of disability is warranted on the record as presently constituted.

For his part, the Commissioner contends that the record amply demonstrates that the ALJ properly developed the record and conducted a full and fair hearing. Defendant highlights that a review of both administrative hearings reveals that the ALJ allowed plaintiff's counsel the opportunity to question the VE and properly required that counsel define certain broad terms employed in counsel's hypothetical question. The Commissioner's position is that plaintiff's claim of error is not supported by the record as a matter of fact. Moreover, in asking Plaintiff's counsel to explain what she meant by *moderate* limitations *vis a* vis Butler's residual functional capacity, defendant highlights that the ALJ was attempting to ensure that the VE's testimony was reliable and did not preclude counsel's question.[10] The Commissioner further observes that there is no factual or legal basis to support the plaintiff's allegation that the ALJ was biased against her in any way or prevented the development of the record or a full and fair hearing. Indeed, defendant highlights that the record demonstrates the contrary in that, before making a determination in this case, the ALJ recessed the hearing, acceded to plaintiff's request for a consultative psychological evaluation[11] and conducted a supplemental hearing replete with the

---

[9]*Id.,* at pp. 16-17 (referring to Plaintiff's Statement of Facts at item ##'s 1, 3, 14, 34, 35-37, 41, 42, 44, 45, 47-49 and 62) [Rec. Doc. # 13].

[10]*See* Commissioner's Memorandum in Support of Cross-Motion at pp. 10-11 (noting the ALJ stated that, "I'm going to let you ask the question, I just want you to define for him so we know what you are asking him") [Rec. Doc. #22].

[11]If the claimant is not able to provide sufficient medical evidence, the ALJ may make a decision based on the information available. *See* 20 C.F.R. § 404.1516 (2009). A consultative examination *may be necessary to develop a full and fair record. See* 20 C.F.R. § 404.1517

testimony of both a medical expert (psychologist) and a vocational expert. In sum, the Commissioner argues that (1) the ALJ's assessment of the plaintiff's mental limitations was specific and supported by substantial evidence and (2) the record was fully developed and there can be no question but that the ALJ conducted a full and fair hearing – *meaning* that two hearings were conducted by the ALJ resulting in a transcript totaling 60 pages of testimony (including plaintiff's, two vocational experts' and a medical expert's testimony) which demonstrates that the ALJ afforded plaintiff the ample opportunity to present her best case of disability and that, in any event, plaintiff failed to establish any resulting prejudice.[12]

## VI. Discussion

Under 42 U.S.C. § 405(g), the Court has the power to enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

### Substantial Evidence Supporting
### the ALJ's RFC Assessment/Mental Limitations

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

---

(2009).

[12]*Id.,* at pp. 11-12 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) for the proposition that the court may only reverse the case if the plaintiff can establish resulting prejudice and that, to establish prejudice, plaintiff must show that she "could and would have adduced evidence that might have altered the result") [Rec. Doc. #22].

*Objective Medical Facts*

The objective medical evidence shows that Butler suffers from optic atrophy of the right eye (blindness), glaucoma of both eyes, hypertension (under good control and asymptomatic) and post traumatic stress disorder (PTSD), all of which the ALJ determined were "severe" within the meaning of the regulations. The ALJ incorporated the mental limitations identified by the medical expert (Dr. Jasinski) into his residual functional capacity (RFC) assessment. (Tr. 29). The ALJ specifically noted that he gave significant weight to the medical expert's findings and explained that his opinion *was consistent* with the consultative psychological examiner's (Dr. Watkins') report, findings and opinion as well as with plaintiff's treating psychologist's (Dr. Jurow's) overall findings of improvement. (Tr. 30). The ALJ reported:

> With respect to the mental impairments, Daniel K. Watkins, Ph.D., a consulting evaluating psychologist, reported on June 19, 2006, that his diagnostic impression was post-traumatic stress disorder and bereavement ([plaintiff's] mother had died the day before [her consultative psychological evaluation]). He indicated that the claimant should have no difficulty understanding, remembering, and carrying out simple concrete instructions. (Exhibit 7F)

> The records of James Jurow, Ph.D., show that the claimant received treatment during the period of February 6, 2006 through August 28, 2006, for post-traumatic stress disorder and adjustment disorder with mixed anxiety and depression, which was evidenced by her anger, depression, irritability, insomnia and anxiety. However, by April 29, 2006, the claimant reported that her depression and anxiety were much improved. As of that date, her global assessment of functioning (GAF) had improved to 65 (*mild* symptoms) from 45 (*serious* symptoms). Although her symptoms temporarily worsened after her mother died, they remained at the moderate level. (Exhibits 11F and 12F)

> * * *

> With regard to the opinion evidence relating to mental limitations, the opinion of Dr. Jasinski, the medical expert, that [plaintiff] is limited to simple, low stress, work in terms of no production or pace quotas, that she could interact appropriately if interaction was minimal, that she could deal with minor changes in routine but not major changes, that she has no limits using judgment, and that she cannot concentrate on complex tasks, is given *significant* weight because it is

consistent with Dr. Watkins' evaluation report and medical source statement and with Dr. Jurow's treatment records, which show that although the claimant has had limitations in her ability to function mentally, they are not sufficient enough to preclude all substantial gainful activity. (Tr. 29-30).

Dr. Watkins reported that Butler had verbal intellectual functioning and performance/full scale intellectual functioning in the borderline range. He opined that she should have no difficulty understanding, remembering and carrying out simple concrete instructions but that she had moderate impairment with respect to detailed instructions. Dr. Watkins estimated Butler's memory function to be "low average" and determined that there was no indication of organicity. He further found that plaintiff's judgment skills were adequate and that she was fully capable of managing any benefit payment. Dr. Watkins explained that Butler's ability to respond appropriately to work pressures and minor changes in routine work was only moderately impaired. Addressing her ability to interact with coworkers, Dr. Watkins testified that her mental functioning was only *slightly* impaired and that limitation with respect to her ability to act with supervisors and the public was *moderately* impaired.

Dr. Watkins' impression was that, based upon plaintiff's history, clinical presentation and medical records, Butler was experiencing *mild* to moderate PTSD as a result of her Hurricane Katrina experience, but that she receives appropriate psychiatric treatment to some good effect while remaining *mildly* symptomatic. Dr. Watkins did not expect plaintiff's condition to last for an entire twelve month period, explaining that *Butler's prognosis for further improvement appears to be fairly good.*[13] Clearly, Dr. Watkins' report and medical source statement support the ALJ's residual functional capacity finding. Moreover and as shown below, they are

---

[13]*See* Dr. Watkins' June 19, 2006 Report (Tr. 234-235).

consistent with Dr. Jasinski's expert testimony and Dr. Jurow's treatment records.

Dr. Jurow's progress notes indicate that plaintiff's PTSD symptoms improved with treatment. His initial evaluation on March 24, 2006 note his assessment of plaintiff with a GAF score of 45,[14] which indicates serious symptoms. (Tr. 284-286). Just one month later (April 29, 2006), Dr. Jurow found the plaintiff's mental condition much improved, assessing a GAF score of 65,[15] indicating only mild symptoms. (Tr. 281-282). Plaintiff had just returned from a trip to California to celebrate Easter with family. Psychiatric progress notes dated April 29, 2006 state:

> Patient reports she went to California to be with her family for Easter. Reports she enjoyed being close to family. She states that she had the routine laboratories drawn yesterday. Patient states that her depression and anxiety are much improved. She states that she goes to the park during the day. And barbecues with her Husband in the evening. Side effects are denied. Medications from other providers include Sinutab and Albuterol inhaler.

(Tr. 281). The results of her mental status evaluation provided:

> General appearance is casual. Attitude is cooperative. Psychomotor activity is within normal limits. Eye contact is good. Sleep is good. Appetite is good. Mood is euthymic. Affect is full range.
>
> Speech quality and quantity, normal as well as volume, tone and velocity. No impediments are noted.

---

[14]Diagnosticians consider psychological, social, and occupational functioning in determining a Global Assessment of Functioning ("GAF") score. The GAF measures the functional impact of Axis I and Axis II diagnoses. The DSM-IV contains the GAF scale, which exists to help practitioners communicate by giving them a language to describe clusters or constellations of symptoms. A GAF score of fifty (50) or below (in this case 45) indicates serious impairment in communication or judgment that impacts the individual's ability to function in society – *i.e*., a serious impairment in social, occupational or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 34.

[15]A GAF score between 61 to 70 indicates that a person has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

Thought content: patient denies hallucinating, delusions, suicidal thoughts, homicidal thoughts, or problems with anger. Cognition: patient oriented X 4. Attention is good. Concentration is good. Memory is good. Insight is good. Judgment is good.

DIAGNOSIS:
Axis I:           Posttraumatic Stress Disorder
Axis II: Deferred
Axis III: Blind [right] eye
Axis IV: Displacement
Axis V: [GAF score] 65.

 (Tr. 281-282).  Butler's medications (Celexa and Lorazepam(as needed)) were continued and Dr. Jurow scheduled a return visit three months later.  An August 23, 2006 counseling progress notes state that plaintiff wants to recover from the trauma of Hurricane Katrina and the recent death of her mother and gave the following prognosis: "Good.  Claimant getting ready to move back to New Orleans on 9/9." (Tr. 262).  On September 6, 2006, her prognosis was also "good" and the notes further stated: "Claimant doing well and preparing for her return to New Orleans." (Tr. 263).

The "mere diagnosis of a mental impairment [such as PTSD] does not establish a claimant's disability claims."[16]  Plaintiff "must show that she was so functionally impaired by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity."[17]

---

[16]*Martin v. Chater*, No. 95 C 0245, 1995 WL 505955, at *6 (N.D.Ill. Aug. 23, 1995) (*citing Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir.1991)); *accord Harris v. Barnhart*, No. 02-55540, 2003 WL 21054733, at *2  (9th Cir.2003); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir.1998); *Jones v. Sullivan*, 954 F.2d 125, 128 (3rd Cir .1991); *Arroyo v. Secretary of Health & Human Servs.*, 932 F.2d 82, 87-88 (1st Cir.1991); *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir.1983).

[17]*Id*. (emphasis added); *accord Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir.1992).

Substantial evidence supports the ALJ's conclusion that plaintiff was *mild* to moderately (not markedly or severely) impaired by her PTSD disorder during the relevant time period. Plaintiff did not seek treatment from any mental health professional until March 24, 2006, *i.e.*, almost a full year after she applied for SSI benefits.[18]  Plaintiff showed substantial improvement over the short course of therapy.  Plaintiff was never hospitalized on account of her mental condition.

The ALJ ruled that Butler suffers from a "severe" mental impairment, but a non-severe headache symptomotology.  "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 152 F.2d 1099, 1101 (1985).

Here, there is no objective medical evidence that Butler's headaches had any significant effect on her ability to engage in work related activities.  She allegedly stopped working because she *could not read the food orders*.  It is also undisputed that Butler has been able to take care of herself, travel, perform routine daily activities and succeed in her plan to relocate to New Orleans.  The objective evidence supports the conclusion that Butler is not disabled as a result of the combination of "severe" impairments, including PTSD.  Therefore, the objective medical evidence factor weighs in favor of the ALJ's decision.

*Diagnosis and Expert Opinions*

The second element considered is the diagnosis and expert opinions of treating and

---

[18]*See* Leads Protective Filing Worksheet dated April 22, 2005 (Tr. 86); Application for SSI filed May 3, 2005 (Tr. 87-89).

examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir.1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 110 F.2d 482, 485 (5th Cir.1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir.1981). Furthermore, regardless of the opinions and diagnoses of medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir.1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990)).

The Court discussed above the medical opinions in the record from both the plaintiff's treating psychologist and the consultative examining psychologist, Dr. Watkins. In addition, the Court considered the testimony of the medical expert (Dr. Jasinski), who testified at the September 8, 2006 supplemental administrative hearing. There are no medical opinions in the record from any of Butler's treating physicians regarding her physical limitations.

The physical RFC assessment was completed by a state agency medical consultant on May 26, 2005. There is no dispute that claimant has no exertional limitations but does have some postural and visual limitations, previously discussed. As to mental limitations, the state agency's medical expert testified that Butler was limited to simple, low stress work – *i.e.*, no production/pace quotas, minimal interaction and that she could only deal with minor changes in work routine. Dr. Jasinski's opinion is entirely consistent with the opinion of Dr. Watkins and

the medical evidence as a whole.[19]

*Credibility: Subjective Evidence of Pain and Disabling Symptoms*

The third element considered is the subjective evidence of pain and disability, including

the plaintiff's testimony and corroboration by family and friends. Not all pain and subjective

symptoms are disabling, and the fact that an individual cannot work without some pain or

discomfort will not render her disabled. *Cook*, 750 F.2d at 395. In an appeal of a denial of

benefits, the Act requires this Court's findings to be deferential.[20] The evaluation of evidence

concerning subjective symptoms is a task particularly within the province of the ALJ, who has

the opportunity to observe the claimant.[21]

At the time plaintiff filed her disability application, she claimed that she was unable to

work due to glaucoma in both eyes, right eye blindness and hypertension. (Tr. 57, 94, 121).

Plaintiff later testified at the hearing that she was experiencing headaches and depression as a

result of her evacuation experience during Hurricane Katrina.

The ALJ recognized the appropriate legal standards applicable to credibility

determinations and detailed the numerous factors which may figure into the assessment. (Tr. 29-

30). Indeed, the ALJ is allowed to discount the plaintiff's subject complaints if there are

---

[19] *See* Discussion at pp. 11-14 (above).

[20] *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Scott v. Shalala,* 30 F.3d 33, 35 n. 2 (5th Cir. 1994); *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994) (recognizing that "the ALJ is best positioned" to make determinations because of the opportunity to observe the claimant first-hand).

[21] *Greenspan v. Shalala,* 38 F.2d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'"); *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir. 1991); *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir.1983).

inconsistencies between the alleged impairments/limitations and the evidence as a whole.[22]

Unlike the Ninth Circuit's "clear and convincing" two pronged analysis applicable to credibility

determinations, the Fifth Circuit only requires that the ALJ explain his or her reasons for

rejecting the claimant's subjective complaints. The governing law does not require adherence to

"formalistic rules" in detailing the credibility assessment and further does not require the ALJ to

discuss all of the evidence that was accepted or rejected.[23]

As previously noted, the ALJ's decision reflects that she considered a number of factors

and that substantial evidence supports her findings. The ALJ's credibility assessment is entitled

to judicial deference. The undersigned previously discussed the objective medical evidence

which does not support plaintiff's claim of total disability. The ALJ discussed the medical

evidence which showed right eye blindness and glaucoma (both eyes) but that the visual acuity

in Butler's left eye was close to normal. The ALJ further noted that plaintiff's hypertension was

under control with medication[24] and that the August 11, 2006 CT scan of her head showed no

definitive acute abnormality.[25] Butler's psychological counseling records and progress notes

amply demonstrate that her mental condition improved with treatment and her symptoms were

only mild to moderate and not disabling. A discussion of the objective medical evidence and the

---

[22]*Dunbar v. Barnhart,* 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991));*Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 1995).

[23]*Falco,* 27 F.3d at 163-64.

[24]*See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988) (noting that an impairment that can be remedied or controlled by medication or therapy cannot serve as a basis for a finding of disability); *Fraga v. Bowen,* 810 F.2d 1296, 1305 (5th Cir. 1987) (same).

[25]*Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir. 1988) ("The Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings.").

medical expert's testimony was previously discussed at length and is incorporated here by reference.

Finally, the ALJ properly considered the level of the plaintiff's daily activities in assessing her credibility.[26]  At all pertinent times, plaintiff remained capable of independent travel to California to visit family and to relocate to New Orleans.  The ALJ cited plaintiff's own reports that she was capable of preparing her own meals, cleaning/ironing, grocery shopping, handling finances, reading, watching television, socializing with friends and swimming.[27]

Because the ALJ supported her credibility determination with references to the medical evidence and to Butler's testimony and statements about her daily activities, and because the ALJ did not rely on any improper factors, the subjective evidence factor also weighs in favor of the ALJ's decision.

*Education, Work History and Age*

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of

---

[26]*See* 20 C.F.R. § 416.929( c).

[27]Disability Report (Tr. 104-106); Dr. Watkin's June 19, 2006 Report (noting that "corrective lenses were recommended to compensate for poor vision in her left eye but that plaintiff does not have any eyeglasses as of yet," and that she lives with a friend, performs self-care skills, cleans house, does laundry, watches television and socializes with neighbors) [Tr. 232-233]; Transcript of March 27, 2006 Administrative Hearing (discussing daily activities) (Tr. 312-313); Transcript of September 8, 2006 Supplemental Hearing (discussing travels) (Tr. 347-348).

substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

Plaintiff claims that the ALJ used vague terms in her residual functional capacity assessment and in the hypothetical question posed to the VE and further prevented her from having a full and fair hearing. In this regard, Butler claims that the medical expert Dr. Jasinski defines the term "moderate," which he used in his assessment of the Plaintiff's mental assessment. Dr. Jasinski testified at the September 8, 2006 hearing that plaintiff's mental condition (PTSD) did not meet or equal the severity of any listing. (Tr. 351). He explained that Butler's functions of daily living were only mildly impaired, her limitations in social functioning were only moderately impaired and that plaintiff's ability to sustain concentration persistence or pace in a work situation were only moderately impaired (except in periods of stress they would be markedly impaired). *Id.* Then, with respect to moderate limitations in social function, Dr. Jasinski explained how that moderate limitation would affect Butler's ability to interact appropriately in a work setting stating that:

> In a low stress situation, [Butler] should be able to [interact appropriately with coworkers].... [G]iven the nature of the diagnosis (PTSD), stress is going to aggravate her ability and symptoms of that disorder.

(Tr. 352). Dr. Jasinski further explained that interaction by itself should not be stressful, but the requirement of working at a fast pace or having quotas could produce stress. *Id.* The medical expert further acknowledged that Butler would have some limitation on her ability to interact with the public and to accept criticism from her supervisors. *Id.* at 352-353. Explaining the impact of the moderate limitations in concentration, persistence and pace on plaintiff's ability to understand and carry out complex detailed work, Dr. Jasinski testified that plaintiff would be able to maintain and carry out simple work instructions and deal with minor changes in a routine

work setting. (Tr. 353).  Plaintiff's counsel was given the opportunity to question Dr. Jasinski but declined to do so stating: "No questions, thank you." (Tr. 354).

Based on the medical expert's testimony, the ALJ asked the vocational expert whether a hypothetical person plaintiff's age (49), with a high school education and two years of college and the same work history, with restriction from climbing and limited to simple low stress work (with no pace/production quotas and with only minor changes in routine), could perform plaintiff's past relevant work.  Without hesitation or the need for clarification, VE Jannus responded affirmatively, that she could perform the past relevant work as a janitor and cook's assistant/helper. (Tr. 356).   He further affirmatively indicated that her visual limitations credited by the ALJ should not appreciably affect her ability to perform said past relevant work. (Tr. 357-365).

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir.1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)).  It is well-settled that a vocational expert's testimony, based on a properly phrased hypothetical question, is sufficient when it incorporates all of the impairments which the ALJ has recognized as supported by the record as a whole.   The critical issue is not the precise definition of the term "moderate," rather it is how the ALJ defined the term for the vocational expert and whether the expert knew what degree of limitation that he was

asked to assess.[28]

Butler argues that the ALJ erred by using the vague definition of the term "moderate" ascribed by the medical expert (Dr. Jasinski). The term "moderate" is not defined in the Commissioner's regulations. The Fifth Circuit recently rejected a similar argument in *Cantrell v. McMahon*, 227 Fed.Appx. 321, 2007 WL 557567 (5th Cir .2007). In that case, the ALJ had "defined 'moderate', both in his decision and in the interrogatories directed to the vocational expert, as meaning 'there are some moderate limitations, but the person can still perform the task satisfactorily.'" *Id.* at * 1.

> Cantrell claims that, because "moderate" falls between "mild" and "marked", which are defined in the regulations, it should indicate a greater degree of limitation than that in the ALJ's definition. Although the term "moderate" is not defined in the regulations or the Program Operations Manual System, Cantrell does not show [that] the definition used by the ALJ conflicts with either. "Marked" is defined as "more than moderate but less than extreme". Accordingly, "moderate" is less severe and was not used in a manner inconsistent with the regulations. Moreover, there is substantial evidence [that] the vocational expert understood the degree of limitation at issue in assessing what level of work a person with Cantrell's [residual functional capacity] could perform.

*Id.* at * 2 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00( c)).

Similarly, in *Beene v. McMahon*, 226 Fed.Appx. 348, 2007 WL 836926 (5th Cir.2007), when the ALJ used the same definition of moderate, the Fifth Circuit held that the critical issue on appeal is not the precise definition of "moderate" but whether the ALJ was properly able to assess Beene's RFC to determine whether she was able to perform her past job. In *Beene*, the ALJ had a vocational expert determine, based on the definition of the RFC found by the ALJ, whether Beene would be employable. The vocational expert was able to sufficiently incorporate

---

[28]*See Cantrell v. McMaho*n, 227 Fed. Appx. 321, 2007 WL 557567 (5th Cir .2007); *Beene v. McMahon*, 226 Fed. Appx. 348, 2007 WL 836926 (5th Cir.2007).

the disabilities outlined by the ALJ and determine that Beene would be able to find employment in the national economy. *Id.* at *2.

In the instant case, Dr. Jasinski testified regarding his findings giving specific examples of what he meant by "moderate limitation" in concentration, persistence or pace in the work setting. (Tr. 350-354). He further explained how the "moderate" limitations in social function affected an individual's abilities to interact with coworkers, supervisors and the public in a work setting. *Id.* The ALJ plainly understood what "moderate" meant. The vocational expert also heard Dr. Jasinski's findings and explanations and had reviewed the medical records. It is apparent that VE Jannus understood the basis for the ALJ's definition; the VE determined without any hesitancy that an individual with such "moderate" limitations in mental functioning could perform plaintiff's past relevant work. (Tr. 356). There is substantial evidence that the vocational expert understood the degree of limitation at issue in assessing what level of work a person with Butler's RFC could perform.

The hypothetical question in this case included all and only those impairments borne out by the record and credited by the ALJ. The administrative record in this case adequately reflects the findings established by the medical records. Accordingly, this final factor also weighs in favor of the ALJ's decision that Butler is not disabled within the meaning of the Act.

### VI. Conclusion and Recommendation

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" at Step 4 on these facts. All of the relevant factors weigh in support of the ALJ's decision and the ALJ used the correct legal standards.

Accordingly and for all of the aforesaid reasons,

**IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be GRANTED, Plaintiff's Motion for Summary Judgment be DENIED, and the decision of the Commissioner be AFFIRMED.

## VII. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc).

New Orleans, Louisiana, this <u>25th</u> day of August, 2009.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE